The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between plaintiff and defendant-employer.
3. Frontier Insurance Company was the compensation carrier on the risk.
4. The date of alleged injury was 8 September 1992.
The parties also stipulated to 11 pages of medical records.
* * * * * * * * * * * * *
The Full Commission adopt as their findings of fact found by the Deputy Commissioner, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. Plaintiff, who is 32 years old, was employed by defendant-employer as a fitness consultant and sales representative for five months in 1992. Plaintiff's duties involved giving tours of the facility to prospective members and selling memberships. She was paid $4.00 an hour for a 40-hour week, plus commission on memberships she sold.
2. Plaintiff was a member of Fitness Today before she was hired as a sales representative. At the time she was hired she was told by the manager, Kelly Conti, that she should do well as a fitness consultant since she worked out and looked good.
3. It was not a requirement that persons employed by Fitness Today as sales representatives work out, but according to Manager Kelly Conti, virtually all of them did and "it was just understood that's the image you had to have to work there." Defendant-employer did have occasion to hire people who did not work out at all. But according to Conti, "If you're selling memberships to a health club you should know what you're talking about and should look like you work out."
4. Defendant-employer did sell "power drinks" (such as Gatorade) and fruit juices. It did not sell fat burning drinks. Plaintiff was not hired or required to promote nutrition or sell drinks.
5. Plaintiff's supervisors at Fitness Today did not advise her to lose weight or tell her that her weight was detrimentally affecting her sales. Plaintiff's supervisors became aware that plaintiff had low self-esteem and that plaintiff was constantly complaining about her weight, even though she could be described as thin (see ER admission note).
6. Some six to seven weeks prior to 8 September 1992 defendant-employer contracted with an outfit called Club Star Promotions to sell promotional memberships to Fitness Today. Club Star Promotions had three men working at Fitness Today — Greg, Clay, and Stewart. They were not employees of Fitness Today, did not have supervisory authority over plaintiff, and were not brought on board to train or advise plaintiff in her sales techniques. Fitness Today did not contract with Club Star Promotions to sell legal or illegal fat burning drinks or provide nutritional information to the employees, members, or prospective members.
7. The Club Star Promotions representatives were working entirely independent of the regular Fitness Today sales representatives. However, because they worked in the same small building they were bound to have contact with each other.
8. Kelly Conti disliked the representatives from Club Star Promotions and advised her employees to stay away from Stewart, Greg and Clay. She identified them as troublemakers from day one and told them to stay away from her staff. Conti contacted the club owner several times to try to get Club Star Promotions out of there. Nevertheless, being in a small building, the Fitness Today employees and the Club Star Promotions representatives would run into each other and have occasion to talk. Stewart in particular frequently stood around with the Fitness Today employees and "always had his two cents" to add to any conversation. He professed to be an expert on any subject and even though Conti told him to stay away from the staff, he did give Fitness Today employees advice on how to increase their sales.
9. On 8 September 1992 Stewart gave plaintiff a substance to drink which he told her was an all natural fat burner. Plaintiff was unaware the drink was illegal. Plaintiff told Assistant Manager Consalvi that she was going to drink it, and Consalvi, not having much faith in such products and certainly not knowing that it was illegal, sarcastically said go ahead and let me know if it works. Within 20 minutes of drinking what turned out to be gamma hydroxybuterate, plaintiff became extremely ill and was found on the floor in a seizure-like state. She was transported by ambulance to Forsyth Memorial Hospital, where she was admitted for two days for seizure, decreased mental status, and respiratory depression secondary to a gamma hydroxybuterate overdose.
10. Stewart also provided another employee with the drink, but she did not become ill after drinking it.
11. Plaintiff returned to work after two weeks, but was so embarrassed and self-conscious over what had happened that she shortly thereafter resigned. Club Star Promotions left town when plaintiff was hospitalized. A variety of illegal substances, including steroids, were found in Stewart's hotel room.
12. For plaintiff, an already thin employee, drinking the fat burner did not benefit defendant-employer or otherwise further defendant-employer's business, and was not a risk peculiar to the employment or incidental to the character of the business. It was not plaintiff's responsibility to sell or promote fat burning or nutritional products and she had not been told by defendant-employer that she needed to lose weight or otherwise change her appearance to better her sales record.
* * * * * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSION OF LAW
Plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendant-employer on 8 September 1992. Plaintiff did not suffer from any kind of occupational disease and was not placed at an increased risk of some incident like this one occurring by virtue of her employment at a health club.
* * * * * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
ORDER
1. Plaintiff's claim is hereby DENIED.
2. Each side shall pay its own costs is hereby DENIED.
IT IS FURTHER ORDERED that this case be REMOVED from the Full Commission hearing docket.
This the __________ day of ________________________, 1994.
 S/ ______________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ______________________________ BERNADINE BALLANCE COMMISSIONER
S/ ______________________________ J. RANDOLPH WARD COMMISSIONER
JHB/nwm 11/01/94